# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

MARK BRIMMEIER,

      Plaintiff                                 Case No. 2:20-cv-10426-BAF-DRG

v                                              HON.  BERNARD A. FRIEDMAN

DeMARIA BUILDING COMPANY,
A Michigan Corporation,
DeMARIA BUILDING COMPANY
DEFERRED COMPENSATION PROGRAM,
An ERISA Plan

      Defendant.
_____/

| FRANK & FRANK LAW | BUTZEL LONG, PC |
|---|---|
| By: JONATHAN B. FRANK (P42656) | JAMES S. ROSENFELD (P39434) |
| JANETTE E. FRANK (P42661) | LYNN F. McGUIRE (P57124) |
| Attorneys for Plaintiff | SARAH L. NIRENBERG (P77560) |
| 3910 Telegraph Road, Suite 200 | Attorneys for Defendants |
| Bloomfield Hills, Michigan 48302-1461 | 150 W. Jefferson, Suite 100 |
| (248) 723-8691 | Detroit, Michigan 48226 |
| jonfrank@frankandfranklaw.com | (313) 225-7000 |
| janfrank@frankandfranklaw.com | rosenfeld@butzel.com |
| | mcguire@butzel.com |
| | nirenberg@butzel.com |

_____/

## REPLY IN SUPPORT OF MOTION TO AMEND COMPLAINT

The case is simple: DBC does not want to pay Mr. Brimmeier the over $400,000 he earned in bonuses between 2001 and 2015 but agreed to defer.

According to the Court's scheduling order, Mr. Brimmeier had until March 2, 2021 to file a motion to amend his complaint. This is undisputed, and Mr. Brimmeier

1

and his counsel are certainly entitled to rely on the order as they litigate the case. That DBC decided for tactical reasons to file a motion for summary judgment six weeks earlier should not diminish or impair Mr. Brimmeier's right to file a timely motion (DBC apparently wanted to use its motion for summary judgment to put pressure on Mr. Brimmeier at the mediation conducted on January 25). It is hard to see how anything else matters – DBC may believe Mr. Brimmeier *could have* filed his motion earlier, but he was under no obligation to do so.

DBC spends 25 pages aggressively yet incorrectly attacking Mr. Brimmeier and his counsel for game-playing and filing frivolous, untimely pleadings. But in reviewing those 25 pages the Court will ***never find*** a mention of the March 2, 2021 deadline, much less an argument from DBC about why Mr. Brimmeier was under some obligation to file his motion to amend the complaint weeks or months before the deadline. No such obligation exists.

The substance of the proposed amendment is not complicated — discovery established that Mr. Brimmeier was terminated by DBC in January, 2018, that he became "employed by" Ally at the same time, and that his subsequent employer Ally was a separate company from which he was terminated a year later. Mr. Brimmeier was actually not aware that he became "employed by" Ally and of the legal separation between the two, even though he spent the last year working for Ally instead of DBC – this was a piece of internal DBC/Ally business that was hardly

2

transparent. The final concession of this point was in Joseph DeMaria's own January 19, 2021 declaration.

DBC suggests that the motion to amend is futile. But because Mr. Brimmeier was terminated by DBC without cause in January, 2018, discovery also confirms that he then became absolutely entitled to full payment of his deferred compensation, regardless of the 2016 Plan and regardless of his termination from Ally in January, 2019.

DBC suggests that Mr. Brimmeier's ERISA claim is barred because he did not know when he first triggered DBC's review process that he was fired by DBC in January, 2018. First, there was no internal review process required by the unwritten Pre-2016 Plan under which Mr. Brimmeier earned all his bonuses. Second, DBC's argument turns ERISA law on its head. As the Court will note, Mr. Brimmeier's pre-complaint ERISA appeal, required by the 2016 Plan, raised the issue he thought was relevant at the time. The legal principles DBC relies on are to protect the employee, not the employer, in case the employer raises a new issue once a lawsuit is filed. At the same time, there is no such logic supporting DBC's position – would DBC now concede that if Mr. Brimmeier had raised the issue that he was fired by DBC in January, 2018, DBC would have agreed with him and paid him his deferred compensation? Of course not. It would be futile to force Mr. Brimmeier to re-start the internal appeal process, and futility is a recognized exception to the

3

requirement that a plaintiff exhaust his or her administrative remedies. *Hill v. BCBS of Michigan*, 409 F.3d 710, 719 (6th Cir. 2005).

DBC suggests that Mr. Brimmeier sought to amend his complaint because of a purported foreclosure of his case by Sixth Circuit precedent. There is no such foreclosure, as explained in Mr. Brimmeier's opposition to DBC's motion for summary judgment. Regardless, and this is the central issue, DBC simply seeks to avoid having this case decided on the merits. The Court can only speculate as to why, since case law establishes that "cases should be tried on their merits rather than on the technicalities of pleadings," and this motivation must inform the Court's decision. *Janikowski v. Bendix Corp.*, 823 F.2d 945, 951 (6th Cir. 1987).

DBC misses the point about prejudice. Yes, DBC filed a motion for summary judgment. For tactical reasons, it did so **before** Mr. Brimmeier's Court-ordered deadline to amend his complaint had passed. That was DBC's choice. But DBC cannot now claim to be prejudiced as a result of this aggressive tactic. And there is a logical flaw as well – is DBC saying it would have waited to file? Filed a different motion? Conducted different discovery? That is hard to say. But the solution is obvious: if DBC wants to file another motion for summary judgment claiming that Mr. Brimmeier was not fired by DBC in January, 2018, the Court will be in a position to permit that after allowing the amendment. As the record already makes clear, however, there would be no basis for such a motion, since it is not disputed that Mr.

4

Brimmeier's employment with DBC ended in January, 2018.  DBC may now say that he was "loaned" to Ally, but that is not what the DeMarias testified to; Joe DeMaria went out of his way to testify that Mr. Brimmeier was "employed by Ally." It is too late for him to modify his deposition testimony with a contrary declaration. *Reid v. Sears, Roebuck & Co.,* 790 F.2d 453, 460 (6th Cir. 1986).

Finally, DBC suggests that it wants to "re-open" discovery.  What discovery? DBC took only one deposition, of Mr. Brimmeier.  If DBC wants to ask some additional questions, presumably the Court could allow that and set a quick deadline to complete the presumably very short deposition, though it is hard to imagine what those new questions might be – DBC does not say.  In any event, DBC as the Defendant is an unlikely party to be complaining about the need to modify the scheduling order in a way that would delay the trial.

DBC repeats its arguments about constructive termination.  Mr. Brimmeier addressed those in his opposition to DBC's motion for summary judgment and incorporates those positions here.

Finally, DBC argues that Mr. Brimmeier did not properly seek concurrence. This is a confusing argument, even though DBC continues its aggressive litigation strategy by seeking sanctions against counsel.  Mr. Brimmeier ***did seek*** concurrence in the email DBC attaches as an exhibit, explaining the "nature of the motion" and "its legal basis."  Mr. Brimmeier did this to comply with the Court Rule and for good

5

reason: in many cases a request to amend a complaint is resolved without a motion because the defendant does in fact concur. "The purpose of Local Rule 7.1(a) is to preclude the incurrence of unnecessary fees, costs and expenses by the party who intends to file the motion where the non-moving party concurs with the relief sought by the party intending to file the motion." *Dupree v. Cranbrook Educ. Cmty.,* No. 10-12094, 2012 WL 1060082, at *13 (E.D. Mich. Mar. 29, 2012).

While it could be the case that a non-moving party could make an argument about concurrence ***in the absence*** of any such request, ***and*** where the non-moving party would have agreed to the relief sought, in this case there was an exchange of emails late on February 25 and early on February 26 about the request. At 12:11 p.m. on the 26th, DBC's counsel wrote: "Your email provides insufficient legal basis. For the reasons stated in our last email, we do not concur." Mr. Brimmeier then filed this motion at 1:24 p.m.

If DBC is serious about its concurrence argument, the next logical step is for DBC to say, "we would have agreed with this motion if only we had been asked, or if only we had known the complete basis for it." But, obviously, that is not DBC's position at all. When Mr. Brimmeier requested concurrence, DBC staked out a legal position and threatened to seek sanctions – a pretty firm "no." That Mr. Brimmeier's counsel sent another email with a further explanation was apparently an exercise in

futility.  Even so, Mr. Brimmeier did not file his motion until receiving DBC's response denying concurrence.

Based on the fact that Mr. Brimmeier's motion was filed within the Court's deadline, and that counsel did seek concurrence by explaining that the amendment would focus on the fact that Mr. Brimmeier was terminated by DBC in January, 2018, the Court may use its discretion to tax costs against DBC under L.R. 7.1(a)(3), which provides that "The court may tax costs for unreasonable withholding of consent."[1]

                                  Respectfully submitted,

                                  Frank & Frank Law

                                  By:  */s/ Jonathan B. Frank*
                                     Jonathan B. Frank (P42656)
                                  3910 Telegraph Road, Suite 200
                                  Bloomfield Hills, MI  48302
                                  (248) 723-8691
                                  jonfrank@frankandfranklaw.com
                                  janfrank@frankandfranklaw.com
DATED:  March 18, 2021         Attorneys for Plaintiff

---

[1] The *Williams* case cited by DBC is hardly on point.  There, the plaintiff knew about the alternative theory when she filed her EEOC claim.  Mr. Brimmeier did not know he was "employed by" Ally until discovery.  And the plaintiff was sanctioned for a variety of other questionable tactics and pleadings.

7

## **PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing document was served upon the attorneys of record of all parties in the above cause by serving same to them via electronic mail on March 18, 2021 via:

| _X_ Electronic Service | ___ Hand Delivery |
|---|---|
| ___ First Class Mail | ___ Overnight Mail |

*/s/ Amy Zielinski*
Amy Zielinski

79352/17582.0001